IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

LEDELL LEE                                                    PETITIONER

        v.          CASE NUMBER 5:01CV00377JH

RAY HOBBS[1], Director of the
Arkansas Department of
Correction                                                   RESPONDENT


<u>O R D E R</u>

    Now on this 20th day of September, 2012, comes on for consideration petitioner's **Motion For Stay And Abeyance Of Federal Proceedings** (docket #97), and from said motion, and the response thereto, the Court finds and orders as follows:

    1.    Petitioner Ledell Lee ("Lee") was convicted in Arkansas State court of capital murder, and sentenced to death, for the murder of Debra Reese.[2] His conviction and sentence were affirmed on appeal.  **<u>Lee v. State</u>,  327 Ark. 692, 942 S.W.2d 231 (Ark. 1997).**

    2.    Lee filed a petition for post-conviction relief pursuant to **Ark.R.Crim.P. 37** ("First Rule 37 Petition"), alleging that he had received ineffective assistance from his attorneys in the murder case. The trial court denied the petition, and this denial was affirmed on appeal.  **<u>Lee v. State</u>, 343 Ark. 702, 38 S.W.3d 334**

---

[1] Ray Hobbs is the current Director of the Arkansas Department of Correction.  The Clerk is directed to correct the docket accordingly.  See F.R.C.P. 25(d).

[2] This was Lee's second trial for the Reese murder.  The first one ended in a hung jury.

**(Ark. 2001), mandate recalled by 367 Ark. 84, 238 S.W.3d 52 (Ark. 2006).**

3.    Lee then filed a Petition For Writ Of Habeas Corpus ("Habeas Petition") in United States District Court, asserting 19 claims for relief.

On April 2, 2003, United States District Judge George Howard, before whom the Habeas Petition was then pending, noted from the transcript of the First Rule 37 Petition that Lee's attorney at that time "may have been impaired to the point of unavailability on one or more days of the Rule 37 hearing."  Judge Howard ordered that the Habeas Petition be held in abeyance, and the matter "remanded for the trial court to take appropriate action to allow Petitioner to present relevant evidence and argument in favor of his Rule 37 petition issues."

4.    This remand order was appealed, and the Eighth Circuit affirmed.  **Lee v. Norris, 354 F.3d 846 (8th Cir. 2004).**  The court therein said that "all of the claims alleged in [Lee's] petition had been exhausted," but that "one unexhausted claim" not in the Habeas Petition was raised by Judge Howard.  These circumstances were, in the Eighth Circuit's view, "truly exceptional," and justified Judge Howard in holding the Habeas Petition in abeyance.

The "unexhausted claim," as articulated by the Eighth Circuit, was "whether Mr. Lee had been deprived of his due process rights (as well as his state-law right to qualified post-

conviction counsel) by the conduct of his appointed counsel during the post-conviction proceedings in the state courts."

5.    Lee returned to State court, where he moved the Arkansas Supreme Court to recall the mandate issued on appeal of the First Rule 37 Petition.  **Lee v. State, 367 Ark. 84, 238 S.W.3d 52 (Ark. 2006).**  In agreeing to recall the mandate, the Arkansas Supreme Court  said that "until [Lee] has been afforded a new Rule 37 proceeding, he has potential state claims that remain unexhausted."  The matter was remanded to the trial court for a new post-conviction proceeding.

6.    A new attorney was appointed to represent Lee, and a new Rule 37 proceeding ("Second Rule 37 Petition") was conducted. This petition was also denied, and the denial was affirmed on appeal. **Lee v. State, 2009 Ark. 255, 308 S.W.3d 596 (Ark. 2009).**

7.    On November 9, 2009, the Supreme Court denied *certiorari* to Lee in connection with the Second Rule 37 Petition, **Lee v. Arkansas, 130 S.Ct. 555 (2009)**, and on January 21, 2010, Respondent moved to lift the stay.  On March 15, 2010, this Court, to whom the matter had been transferred during the stay, lifted the stay.  On September 14, 2011, the Court conducted a status conference, and allowed Respondent to file an amended response to the Habeas Petition.  That response was duly filed, and on January 26, 2012, Lee filed a traverse.

8.    Rather than allowing matters to proceed to a decision at

-3-

this point, on February 2, 2012, Lee moved to once again stay the proceedings and hold the case in abeyance, contending that his counsel in the Second Rule 37 Petition was "grossly incompetent" and that there had been a breakdown in the post-conviction process.  As a result, he contends that there are "potentially meritorious claims for relief that are not exhausted and/or undeveloped"[3] and that "many of petitioner's claims cannot be fully and fairly adjudicated by this Court or any other court without further development of the record in the state courts."[4]

Defendant opposes this second stay.

9.  Before a federal district court can review the merits of a state prisoner's habeas claims, normally the petitioner must exhaust available state judicial remedies.  **Picard v. Conner, 404 U.S. 270, 275 (1971)**.  The doctrine of exhaustion of remedies, codified in the federal habeas corpus statute, **28 U.S.C. § 2254(b)(1)**, recognizes that state courts should have a proper opportunity to address a petitioner's claims of constitutional error before those claims are presented to the federal courts.  **Coleman v. Thompson, 501 U.S. 722, 729-32 (1991)**.

10.  The existence of unexhausted claims in a habeas petition presents a problem, in that "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions

---

[3] Document #97, page 12.

[4] Document #97, page 6.

containing both exhausted and unexhausted claims." **Rhines v. Weber**, **544 U.S. 269, 273 (2005)**.  Where that situation obtains, courts have three options:  they can dismiss the petition; they can allow the petitioner to amend and delete the unexhausted claims; and, under certain circumstances, they can stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust the unexhausted claims.  *Id.*

11.  The circumstances under which **Rhines** authorizes the stay and abeyance procedure are these: there must be good cause for petitioner's failure to exhaust; the unexhausted claims must not be "plainly meritless"; and there must be "no indication that the petitioner engaged in intentionally dilatory litigation tactics." Given proper circumstances, **Rhines** teaches that "it likely would be an abuse of discretion for a district court to deny a stay and dismiss a mixed petition."

12.  The foregoing summary of current habeas law establishes that there are four questions that must be resolved in Lee's favor for him to prevail on the motion now under consideration:

(a)  Does Lee's Habeas Petition contain unexhausted claims for relief?

(b)  Is there good cause for Lee's failure to exhaust those claims?

(c)  Do the unexhausted claims pass the "not plainly meritless" test?

-5-

(d)   Is there any indication that Lee is or has been engaged in intentionally dilatory litigation tactics?

13.   The first question is whether Lee's petition contains unexhausted claims.  Judge Howard did not stay Lee's case because he found that Lee's Habeas Petition contained an unexhausted claim.  Instead, he found, *sua sponte*, "an issue not raised in the petition which precludes resolution at this time, in that there are state court issues which must be resolved by the return of this case for a new hearing pursuant to Arkansas Criminal Procedure Rule 37.5."

The Eighth Circuit, on appeal of Judge Howard's decision, said that all of the claims in Lee's Petition had been exhausted, but it described the issue raised by Judge Howard as an "unexhausted claim."   In recalling the mandate, the Arkansas Supreme Court said that Lee had "potential state claims that remain unexhausted."

From the foregoing, the Court concludes that Lee's Habeas Petition is not a "mixed petition," *i.e.*, one containing unexhausted as well as exhausted claims.  While Lee did have an unexhausted *potential* claim, *i.e.*, whether he was deprived of due process and his state-law right to qualified post-conviction counsel, that claim was presented to the State court, and its decision appealed.  It now appears to be an exhausted claim, but also a claim that is no longer viable. The State court reviewed

the claim and granted relief in the form of another Rule 37 proceeding.  No additional habeas claims have been filed.

Lee presents several issues that he claims are unexhausted. However, the issues are either not part of the claims currently before this Court, or they are issues that have not been previously raised.  Lee's petition for writ of habeas corpus has not been amended.  The only claims and sub-issues before the court are the ones contained in the original petition.  Additionally, Lee had the opportunity to resolve all perceived exhaustion issues during his second Rule 37 proceeding.

For these reasons, the Court finds that the first question cannot be resolved in Lee's favor, for his Habeas Petition does not contain unexhausted claims for relief.

14.  Because of the conclusion it has reached on the first question, as noted above, and because of the conclusion it reaches on the fourth question, as noted immediately hereafter, the Court deems it unnecessary to address either the second or third questions mentioned.

15.  Even if Lee's habeas petition did contain an unexhuasted claim, the Court would find that the fourth question cannot be answered in Lee's favor.  An examination of the dates documents were filed in his case, and the contents of those documents, will reveal why.

The docket reflects that the Mandate in the appeal from Judge

Howard's stay and abeyance order was filed on March 29, 2004. At that point Lee was able to return to State court to seek the relief Judge Howard had found necessary.

On June 7, 2004, Respondent moved the Court for an order setting a time limit of 90 days for Lee to seek relief in State court, and directing him to file monthly status reports. Lee opposed this motion, citing problems obtaining counsel, an extensive record, complexity of the case, and problems determining "how to proceed."

On July 28, 2004, Judge Howard appointed attorneys Kent Gipson ("Gipson") and William Odle ("Odle") to represent Lee. He did not set any time limit for instituting State court proceedings, but directed that they be undertaken "as expeditiously as possible." He directed that Lee "file monthly status reports beginning thirty days from the entry of this Order, informing the Court of his progress in exhausting his available state remedies, and sixty days thereafter."

16. The docket reflects that Lee's new attorneys apparently took a very nonchalant attitude toward the requirements for the filing of these Status Reports. The first was not filed until September 20, 2004[5], almost sixty days after Judge Howard's Order. It stated that review of the file had begun. The next was not filed until August 22, 2005.

---

[5] Document #32.

While the Order requiring status reports might well have been confusing -- it could be read to require the filing of one every 30 days or, every 60 days -- the Court believes it could not reasonably have been read to require only one to be filed every eleven months.[6]

The matter was eventually called to Judge Howard's attention, and he entered an Order on June 24, 2005, noting that Lee had been "directed to file status report with the Court every sixty days," and that "[i]n the future, the status reports must be filed in the form of a pleading and must be served upon the Respondent."[7]

Lee filed timely Status Reports on August 22, 2005[8], and November 1, 2005[9], but then fell behind again. The next Status Report was not filed until March 1, 2006[10]. Another was filed April 13, 2006[11] but it hardly counts, being identical to the one filed August 22, 2005, in spite of significant changes in the status of the case.

No Status Reports were filed between December 14, 2006, and

---

[6] Lee contended that he had, in fact, "sent status letters to the Court in May and June," (document # 39) but that is not what Judge Howard's Order required. "File" is a term of art in the legal profession, referring to placing a matter of record by docketing it with the Clerk of Court.

[7] He did not, however, impose any time limit on the initiation of State court proceedings.

[8] Document #42.

[9] Document #46.

[10] Document #47.

[11] Document #50.

May 16, 2007.  Another gap appeared between the Status Report of
June 12, 2007, and the one filed October 2, 2007.  After that
date, no further Status Reports were filed until January 6, 2010.

Given that these Status Reports were the means established by
Judge Howard for the Court to keep track of what was happening in
Lee's case while it was stayed, the Court believes that the many
gaps noted above reflect a disregard both of the letter and the
spirit of Judge Howard's Order.

17.  The content of the Status Reports is even more
revealing. Gipson and Odle were appointed on July 28, 2004, and
the Status Report of September 20, 2004, stated that they were
reviewing Lee's file.  Almost a year later, the Status Report of
August 22, 2005, stated that "[w]e are currently preparing a
motion to recall the mandate."  Efforts to complete the motion
were said to have been "hampered" by "obligations in numerous
other cases" and because Odle had been "unable to work for several
days" due to illness.

To put these reports in perspective, the Court notes that
when Gipson and Odle asked to be appointed to represent Lee[12], they
stated that they had "substantial experience litigating capital
and non-capital federal habeas cases"; that they were employed by
a "law firm dedicated to representing clients such as Mr. Lee";
and that their firm "has extensive resources available to it which

---

[12] Petitioner's Motion For Appointment Of Counsel (document #26).

allow lawyers to handle cases in numerous jurisdictions with efficiency." In light of those claimed credentials and resources, the Court rejects the notion that it would take almost a year to formulate a motion to recall the mandate.

The next Status Report, dated November 1, 2005,[13] reported that the motion to recall the mandate had finally been filed on August 30, 2005 -- 13 months after Gipson and Odle were appointed and almost 17 months after the Eighth Circuit Mandate allowed Lee to return to State court.

While the Court is cognizant that legal proceedings often move slowly and that Lee's file is lengthy and complicated, it is also cognizant of the purposes of the statute of limitations embodied in **§ 2254**. "One of the statute's purposes is to 'reduce delays in the execution of state and federal criminal sentences, particularly in capital cases'." **Rhines*, supra*, 544 U.S. at 276**.

**Rhines** recognized that

> not all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death.

*Id.* at 277-78.

**Rhines** was handed down after Judge Howard issued the stay in this case, but it is instructive with regard to the time frame that is reasonable for stay and abeyance procedures. It does not

---

[13] Document #46.

provide a favorable light in which to view Lee's case.  The Court

therein quoted with approval from **Zarvela v. Artuz, 254 F.3d 374**

**(2nd Cir. 2001)**, to the effect that district courts

> should explicitly condition the stay on the prisoner's
> pursuing state court remedies within a brief interval,
> normally 30 days, after the stay is entered and
> returning to federal court within a similarly brief
> interval, normally 30 days after state court exhaustion
> is completed.

*Id.* at 278.

Far from moving the case along in such a timely fashion, the

Court notes that Lee had not even notified the Court of the

conclusion of State proceedings on the Second Rule 37 Petition

(which occurred on November 9, 2009) by the time Respondent moved

the Court to lift the stay on January 21, 2010.

Based upon its foregoing review, the Court cannot escape the

conclusion that the delays which occurred here cannot be

reasonably viewed as resulting from non-dilatory conduct. This is

especially true in light of the fact that the petitioner was being

represented by a team of experienced attorneys -- backed by a firm

dedicated to representing death penalty habeas litigants and

having "extensive resources" at their disposal.  The Court finds,

therefore, that -- as to the fourth question -- intentionally

dilatory litigation tactics have been utilized on the part of the

defendant.

18.  For the foregoing reasons, the Court concludes that Lee

is not entitled to a second stay and abeyance of his Habeas

Petition, and the Motion For Stay And Abeyance Of Federal Proceedings will be denied.

    **IT IS THEREFORE ORDERED** that **Motion For Stay And Abeyance Of Federal Proceedings** (docket #97) is **denied.**

    IT IS SO ORDERED.

                  **/s/ Jimm Larry Hendren**
                  **JIMM LARRY HENDREN**
                  **UNITED STATES DISTRICT JUDGE**